

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| HARTSVILLE ANESTHESIA ASSOCIATES, PA, *a South Carolina Professional Association*, and ADVANCED PAIN THERAPIES, LLC, *a South Carolina Limited Liability Company*,<br>　　　　　Plaintiffs,<br><br>vs.<br><br>ROBERT F. KENNEDY JR., *in his official capacity as Secretary of Health and Human Services*, and UNITED STATES DEPARTMENT OF HUMAN SERVICES (HHS),<br>　　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:24-4280-MGL |

---

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT, VACATING THE ALJ'S DECISION AND REMANDING, AND RENDERING AS MOOT PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT**

---

## I.     INTRODUCTION

Plaintiffs Hartsville Anesthesia Associates, PA, a South Carolina Professional Association, (Hartsville Anesthesia) and Advanced Pain Therapies, LLC, a South Carolina Limited Liability Company (Advanced Pain) (collectively, Plaintiffs), brought this action seeking judicial review of the final decision of the Administrative Law Judge (ALJ) against Robert F. Kennedy Jr., in his official capacity as Secretary of Health and Human Services (the Secretary), and United States Department of Human Services (HHS) (collectively, Defendants).  Plaintiffs challenge the ALJ's

denial of Medicare reimbursement claims for nerve block injections performed by William Odom M.D. (Dr. Odom) during a clinical trial.

Pending before the Court are Plaintiffs' motion for summary judgment and Defendants' cross-motion for the same. Having carefully considered the motions, the responses, the replies, the record, and the applicable law, it is the judgment of the Court Plaintiffs' motion will be granted in part and denied in part and Defendants' motion will be granted in part and denied in part. Accordingly, the Administrative Law Judge's Decision will be vacated and the case will be remanded. Also pending before the Court is Plaintiffs' motion to amend their complaint, which it filed after the motions for summary judgment were filed.

## II.     FACTUAL AND PROCEDURAL HISTORY

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., commonly known as the Medicare Act, establishes a system of publicly funded health insurance for elderly and disabled individuals. The Centers for Medicare and Medicaid Services (CMS) administers the Medicare program on behalf of the Secretary.

At issue in this case is Medicare Part B, a voluntary supplemental program that "covers certain physicians' services, outpatient services, . . . and other medical and other health services." 42 U.S.C. § 407.2. Under Medicare Part B, beneficiaries receive medical treatment from providers who, in turn, submit reimbursement claims to the government. *Id.* § 1395n. In general, section 1862(a)(1)(A) of the Medicare Act permits coverage for healthcare services which are "reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A). CMS accomplishes this directive "by contracting with [Medicare Administrative Contractors

(MACs) to] process those claims on the Government's behalf." *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 44 F.4th 838, 840 (9th Cir. 2022).

With this initial background in mind, the Court will turn to the facts of this case.

### A.    *The Clinical Trial and Services Provided*

In 2016, Dr. Odom—a board-certified anesthesiologist at Hartsville Anesthesiology and Advanced Pain—served as a principal investigator in a clinical trial.  The purpose of the trial was "[t]o evaluate the efficacy of back extremities[] and back pathologies derived from neurological ischemia disorders using the combination of Monochromatic Infrared Photo Energy . . . and Transcutaneous Electrical Nerve Stimulation . . . therapies."   AASEM/DTSC Neurological Ischemia Clinical Trial Treatment Study I ¶ 1.

The trial was registered with the National Library of Medicine—which assigned it identifier NCT 01979367—and subject to a particular protocol, which Dr. Odom reviewed and acknowledged.   The protocol specified "[e]ach Principal Investigator will make decisions regarding treatment need and frequency for [his] participating patients." *Id.* ¶ 11.

Dr. Odom testified before the ALJ patients reported severe increases in pain immediately after receiving treatment through the trial.  He explained the treatment caused their previously damaged nerves to begin to function again resulting in substantial pain for four to six hours after treatment.  When patients reported this pain, he recommended and provided nerve block injections under Current Procedural Terminology (CPT) Code 64450.

The trial protocol advised such injections "may be utilized to control pain until such a time as [MIRE and TENS] therapies effectively replace the need for additional pain control measures." *Id.* ¶ 9; *see id.* ¶ 19 (delineating a typical treatment protocol to include nerve block pain management "if necessary" at the patient beneficiary's second and subsequent office visits).  "Prior to the use of nerve block [injections] to alleviate pain," the protocol required "each [Principal

Investigator to] ensure the use of a less intrusive alternative therapy method without pain blocks such as is in the purpose of this study." *Id.* ¶ 12.D. "In accordance with [International Classification of Diseases, Ninth Revision (ICD-9)] descriptions used," the protocol explained, "any restrictions or limitations for service by [a local coverage determination] policy would apply, noting that while addressing pain, on multiple sites, sufficient documentation to support additional nerve blocks administered must be kept in the medical files of the patient, for each date of service . . . when treatment or testing is performed." *Id.* ¶ 21.

Relevant here, Dr. Odom accepted many participants into the study and administered to them regular trial treatments and then injections at Hartsville Anesthesia in Irmo, South Carolina. Hartsville Anesthesia then submitted claims to Medicare for the nerve block injections Dr. Odom performed. In total, as relevant here, Hartsville Anesthesia filed over 4500 claims and sought reimbursement and compensation to a sum of $445,825.05.

**B.    *Medicare Claims and Administrative Review***

Initially, the regional MAC—Palmetto GBA, LLC—paid the claims in full. Later, however, it conducted a post-payment review of the claims Dr. Odom submitted. *See Padda v. Becerra*, 37 F.4th 1376, 1379 (8th Cir. 2022) ("When Medicare pays providers, it usually does not review the claim. Instead, Medicare 'generally pays facially valid claims, and conducts post-payment audits to detect overpayments.'" (quoting *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 525 (5th Cir. 2020))); 42 U.S.C. § 1395ddd (authorizing post-payment audits and overpayment recoupment). Based on a 486-claim sample of injections provided to thirty beneficiaries from June 1, 2015, to December 31, 2016, Palmetto GBA found an error and overpayment rate of 100%. *See* 42 U.S.C. § 1395ddd(f)(3) (authorizing review by sampling). Palmetto GBA calculated an overpayment in the amount of $445,825.05 and determined Hartsville Anesthesia was unqualified for a waiver or limitation of liability for the overpayment as provided

4

by 42 U.S.C. § 1395pp(a). Palmetto GBA then issued demand letters to Hartsville Anesthesia and Dr. Odom to this effect.

Hartsville Anesthesia then began the five-step appeals procedure as provided by statute and regulation. This process is as follows:

> First, the party can seek redetermination from the [MAC]. Second, the claimant can seek re-consideration of the [MAC]'s determinations by a qualified independent contractor (QIC). If no applicable [national coverage determination] or [local coverage determination] governs . . . , the QIC is instructed by statute to make a decision with respect to the reconsideration based on applicable information, including clinical experience and medical, technical, and scientific evidence. Third, a claimant can request a hearing on a decision of a [QIC] before an [ALJ]. Fourth, a party's final administrative appeal within [HHS] is to the Medicare Appeals Council . . . , a part of the Departmental Appeals Board. . . . Lastly, a party can bring a civil action in federal court to review a final decision of the Secretary (through the Medicare Appeals Council).

*Almy v. Sebelius*, 679 F.3d 297, 300 (4th Cir. 2012) (citations omitted) (internal quotation marks omitted). A party must follow the administrative appeals process before it can seek judicial review of the Secretary's decision. *See L.N.P. v. Kijakazi*, 64 F.4th 577, 583 (4th Cir. 2023) (explaining a party "may obtain a review" in district court only "after any final decision of the Commissioner of Social Security made after a hearing to which he was a party" (quoting 42 U.S.C. § 405(g))).

Hartsville Anesthesia did so here. It first sought reconsideration by Palmetto GBA of its initial decision, and Palmetto GBA issued a redetermination decision upholding denial of the claims. *See* 42 C.F.R. § 405.904(a)(2) (permitting beneficiaries to request redetermination by a MAC if they are dissatisfied with the MAC's initial determination); *id.* § 405.904(b) (extending this provision to non-beneficiary appellants, including providers). It concluded use of the injections "for treatment of diabetic peripheral neuropathy (chronic pain) have not proven to be effective." Letter from R. Mahaney, Appeals Specialist, Palmetto GBA, LLC, to George K. Brew, Counsel for Hartsville Anesthesia (Mar. 8, 2018). Accordingly, it again denied coverage and

overpayment waiver reasoning Hartsville Anesthesia was unable to show the injections were medically reasonable and necessary.

Hartsville Anesthesia next sought reconsideration by a QIC. *See* 42 C.F.R. § 405.904(a)(2) (allowing beneficiaries to seek reconsideration by a QIC); *id.* § 405.904(b) (applying this provision to non-beneficiary appellants, including providers). The QIC issued an unfavorable decision and found Hartsville Anesthesia to be financially liable for the overpayment. It denied the vast majority of the claims because this type of injection as treatment for peripheral neuropathy is "considered investigational and [is] not medically necessary." Letter from Frank DelliCarpini, C2C Innovative Solutions, Inc., to George K. Brew, Counsel for Hartsville Anesthesia (Aug. 30, 2018). The QIC also denied a smaller number of claims due to improperly altered documentation, insufficient documentation, or because the services were billed in error and not actually provided. The QIC further concluded Hartsville Anesthesia is ineligible for to a waiver of the overpayment.

Hartsville Anesthesia then requested a hearing before an ALJ. *See id.* § 405.904 (providing for an administrative hearing before an ALJ after the QIC's reconsideration decision). At the hearing, the ALJ accepted all of Hartsville Anesthesia's documentary evidence into the administrative record (except for any duplicated documents) and heard testimony from Dr. Odom, Michael Boyer, M.D., and Sean Weiss. Hartsville Anesthesia was the only party at the hearing; neither the QIC nor CMS participated.

The ALJ thereafter issued a decision concluding Hartsville Anesthesia failed to demonstrate it qualified for reimbursement or a waiver of the over overpayment, and it was therefore liable for the full overpayment. Hartsville Anesthesia declined to raise any challenge to the statistical sample itself or the extrapolation therefrom at any point in the administrative process or on judicial review. *See id.* § 405.1014(a)(3) (providing a "special rule for appealing statistical

sample and/or extrapolation"); *id.* § 405.1032 (providing a party waives any objection to sampling or extrapolation if it fails to comply with 42 C.F.R. § 405.1014(a)(3)).  Thus, the ALJ reviewed only the denial of the 486 claims within the sample.  In doing so, the ALJ found seven claims were unsupported by medical records and twelve claims were unestablished by a preponderance of the evidence.  As for the remaining 467 claims, the ALJ determined nerve block injections "are not routine costs of the trial because they are not generally available to Medicare beneficiaries and further because they are not typically provided absent a clinical trial.  As such, the [nerve-block injections] are not reasonable and necessary under [National Coverage Determination] 310.1 and [42 U.S.C. § 1395y]."  Hartsville Anesthesia Associates, OMHA Appeal No. 3-7457357490, at 11 (April 25, 2022) [hereinafter ALJ Decision].

Finally, Hartsville Anesthesia appealed the ALJ's decision to the Medicare Appeals Council (the Council).  The Council advised it was unable to issue a decision, dismissal, or remand order within ninety days of Hartsville Anesthesia's request and therefore allowed Hartsville Anesthesia to proceed directly to judicial review.  *See* 42 C.F.R. §§ 405.1100, 405.1132(b) (granting appellants permission to escalate matters to the federal district court after they receive notice the Council is unable to issue a final decision, dismissal order, or remand order).  Plaintiffs thereafter filed this lawsuit challenging the ALJ's decision.

Separately, prior to the ALJ hearing, CMS revoked both Plaintiffs' billing privileges, subjecting them to a three-year re-enrollment bar.  The bars went into effect in 2021 and expired in 2024.  Neither Plaintiffs nor Odom sought administrative review of that decision.  In the complaint here, Plaintiffs seek to have the revocation reversed and their billing privileges reinstated.

As the Court noted above, Plaintiffs filed a motion for summary judgment, and Defendants filed a cross-motion for the same. All parties responded and replied. Having been fully briefed on the relevant issues, the Court will now decide the motions.

## III.   STANDARD OF REVIEW

Judicial review of the Secretary's final decision as to Medicare benefits is governed by the Medicare Act, 42 U.S.C. § 1395 et seq., as well as the Administrative Procedures Act (APA), 5 U.S.C. § 551 et seq.

"With respect to factual determinations, the Medicare [Act] specifies that the findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive." *Almy*, 679 F.3d at 301 (internal quotation marks omitted); *see* 42 C.F.R. § 405.1136(f) (providing the standard of review for the Secretary's findings under the Medicare Act). "[S]ubstantial evidence [is] 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Almy*, 679 F.3d at 301 (quoting *Consol. Edison Co. v. Nat'l Lab. Rev. Bd.*, 305 U.S. 197, 229 (1938)). "In reviewing for substantial evidence, [the Court does] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

Additionally, the APA "requires courts to determine whether the [Secretary]'s action was arbitrary, capricious, an abuse of discretion, . . . otherwise not in accordance with law, . . . [or] without observance of procedure required by law." *Almy*, 679 F.3d at 302 (internal quotation marks omitted); *see* 5 U.S.C. § 706(2) (establishing the scope of judicial review of agency action). "Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir.

2009). "In practice, an action will not be considered arbitrary and capricious so long as the agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made." *Almy*, 679 F.3d at 302 (quoting *Aracoma Coal*, 556 F.3d at 192-93).

In an APA case such as this, summary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA. *See Ohio River Valley Env't Coal., Inc. v. Kempthorne*, 473 F.3d 94, 100 (4th Cir. 2006) (stating summary judgment was proper because the material facts of the administrative record were not in dispute). "Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).

## IV.     DISCUSSION AND ANALYSIS

### A.     *Whether the Court should dismiss all of Advanced Pain's claims and Hartsville Anesthesia's billing-privileges claim for failure to exhaust administrative remedies*

As a preliminary matter, Defendants argue the Court should dismiss all Advanced Pain's claims and Hartsville Anesthesia's claim relative to the revocation of its billing privileges for failure to exhaust.

As for Hartsville Anesthesia's billing-privileges claim, Plaintiffs state they are unopposed to dismissal, as CMS's re-enrollment bar expired on May 20, 2024. They concede the issue is now moot. Thus, the Court will dismiss this claim without prejudice.

Regarding Advanced Pain, Plaintiffs assert "Advanced Pain Therapies and Hartsville Anesthesia are related entities that employed the same physician[;] . . . [d]ismissing Advanced

Pain . . . while retaining Hartsville Anesthesia would result in duplicative proceedings addressing identical issues[;] . . . Defendants have fully briefed the merits of the case with respect to both Plaintiffs[;] . . . [and] dismissing Advanced Pain . . . would serve no practical purpose, as both entities are now eligible to submit re-enrollment applications regardless of the outcome of this litigation." Plaintiffs' Supplement to Combined Opposition and Reply Addressing Subject Matter Jurisdiction at 4-5.

Under the Medicare Act, "[a]ny individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such or within such further time as the [Secretary] may allow." 42 U.S.C. § 405(g); *see id.* § 1395ff(b)(1)(A) (providing 42 U.S.C. § 405(g) applies to the Medicare Act).

As briefly explained above, "[b]y requiring a final decision of the [Secretary] as a condition for judicial review, [42 U.S.C.] § 405(g) effectively mandates exhaustion of administrative remedies as a prerequisite for filing suit." *L.N.P. v. Kijakazi*, 64 F.4th 577, 583 (4th Cir. 2023). But, "in 'exceptional circumstances,' a court may excuse the exhaustion requirement." *Id.* (emphasis omitted) (quoting *Hyatt v. Heckler*, 807 F.2d 376, 378 (4th Cir. 1986)).

Here, the administrative record fails to indicate any appeal on behalf of Advanced Pain or even any dispute in which it is a party. Rather, the MAC's initial decision, its redetermination decision, the QIC's reconsideration decision, the ALJ's decision, and the Council's order all list Hartsville Anesthesia as the sole party and appellant. Although Advanced Pain requests the Court consider entity relatedness, judicial economy, the lack of prejudice to Defendants, and other practical considerations, the Court is unconvinced such factors constitute "exceptional circumstances" so as to "justify waiver of the [exhaustion] requirement . . . ." *Hyatt*, 807 F.2d at

10

378; *see id.* ("[E]xhaustion of administrative remedies may be excused if the claim is collateral to the claim for benefits, the claimants would be irreparably harmed, and relief is consistent with policies underlying the exhaustion requirement.").

The Court will thus grant Defendants' motion for summary judgment as to all Advanced Pain's claims and dismiss them without prejudice.

### B.     *Whether the ALJ erred in finding Hartsville Anesthesia's claims for nerve block injections are uncovered by Medicare Part B because Hartsville Anesthesia was unable to show they are medically reasonable or necessary*

The primary issue disputed by the parties is the ALJ's denial of coverage for the 467 claims it concluded Hartsville Anesthesia was unable to demonstrate were medically reasonable and necessary. Before addressing the ALJ's decision and the parties' arguments to this Court, it is first necessary to explain part of Medicare's regulatory structure, the rules governing Medicare funding in clinical trials, and the ALJ's decision-making role.

As noted, Medicare Part B covers those items and services that are "reasonable and necessary" for diagnosis or treatment. 42 U.S.C. § 1395y(a). Items and services can be considered categorically reasonable and necessary (or unreasonable and unnecessary) in two ways. The first is if CMS promulgates a national coverage determination (NCD), which is binding on the administrative contractors and ALJs. 42 C.F.R. § 405.1060(a)(4). These are "determination[s] by the Secretary with respect to whether or not a particular item or service is covered nationally" by Medicare. 42 U.S.C. § 1395ff(f)(1)(B); *see Erringer v. Thompson*, 371 F.3d 625, 628 (9th Cir. 2004) (explaining "[t]he Secretary adopts NCDs to exclude certain items and services from coverage on a national level that are not 'reasonable and necessary' under the agency's interpretation of the Medicare [Act]").

In addition, each local contractor—the MACs—can create local coverage determinations (LCD). *See* 42 U.S.C. § 1395ff(f)(2)(B) (defining the term "local coverage determination"); *see*

*generally* Dep't of Health & Hum. Servs., Ctrs. for Medicare & Medicaid Servs., Pub. No. 100-08, Medicare Program Integrity Manual, Ch. 13 [hereinafter MPIM] (establishing procedural guidelines for the creation of LCDs).  An LCD is "a determination by a fiscal intermediary or a carrier . . . respecting whether or not a particular item or service is covered on an intermediary- or carrier-wide basis . . . ."  42 U.S.C. § 1395ff(f)(2)(B).

These determinations apply only within the MAC's geographic region.  *See Hays v. Sebelius*, 589 F.3d 1279, 1280 (D.C. Cir. 2009) (citation omitted); 42 C.F.R. § 421.404(b)(1) (requiring providers to enroll with "the MAC contracted by CMS to administer claims . . . for the geographic locale in which the provider is physically located.").  While an LCD is binding on the MAC and QIC reviewing a claim, "ALJs . . . are not bound by LCDs." 42 C.F.R. § 405.1062(a).  ALJs are required, however, to "give substantial deference to [LCDs] if they are applicable to a particular case." *Id*

Where no NCD, LCD, or other regulation applies, the MAC—or ultimately the ALJ—"determine[s] whether a service is reasonable and necessary" on a "case-by-case basis." *Odell v. U.S. Dep't of Health & Hum. Servs.*, 995 F.3d 718, 720 (9th Cir. 2021) (citing 42 U.S.C. § 1395y(a)(1)(A)).  Throughout the review process, the claimant "has the burden of proving entitlement to Medicare benefits."  *Almy v. Sebelius*, 679 F.3d 297, 305 (4th Cir. 2012) (quoting *Friedman v. Sec'y of Dep't of Health & Hum. Servs.*, 819 F.2d 42, 45 (2d Cir. 1987)).

Central to this case is NCD 310.1, which governs Medicare coverage of routine costs in clinical trials.  Dep't of Health & Hum. Servs., Ctrs.  for Medicare & Medicaid Servs., Pub. No. 100-03 § 310.1, Routine Costs in Clinical Trials (2007) [hereinafter NCD 310.1].  Before the ALJ and this Court, Hartsville Anesthesia has contended only that the injections it provided are "routine costs" in a "qualified clinical trial" as defined in NCD 310.1.  It fails to make any suggestion these

injections are otherwise covered under the NCD (for example, because they were given to treat complications resulting from beneficiaries' participation in a clinical trial) or covered by Medicare for any other reason.

NCD 310.1 provides in part:

> Medicare covers the routine costs of qualifying clinical trials, . . . as well as reasonable and necessary items and services used to diagnose and treat complications arising from participation in all clinical trials.  All other Medicare rules apply.
>
> Routine costs of a clinical trial include all items and services that are otherwise generally available to Medicare beneficiaries (i.e., there exists a benefit category, it is not statutorily excluded, and there is not a national noncoverage decision) that are provided in either the experimental or the control arms of a clinical trial except:
>
> - The investigational item or service[] itself unless otherwise covered outside of the clinical trial;
> - Items and services provided solely to satisfy data collection and analysis needs . . . ; and
> - Items and services customarily provided by the research sponsors free-of charge for any enrollee in the trial.
>
> Routine costs in clinical trials include:
>
> - Items or services that are typically provided absent a clinical trial (e.g., conventional care);
> - Items or services required solely for the provision of the investigational item or service (e.g., administration of a non-covered chemotherapeutic agent), the clinically appropriate monitoring of the effects of the item or service, or the prevention of complications; and
> - Items or services needed for reasonable and necessary care arising from the provision of an investigational item or service in particular, for the diagnosis or treatment of complications.
> . . .
>
> For non-covered items and services, including items and services for which Medicare payment is statutorily prohibited, Medicare only covers the treatment of complications arising from the delivery of

13

> the non-covered item or service and unrelated reasonable and necessary care.

*Id.* In its decision, the ALJ correctly noted the absence of any NCD specifically addressing nerve blocking injections like those administered here, so only NCD 310.1 could require their coverage.

Ultimately, as noted above, the ALJ denied coverage for 467 of Hartsville Anesthesia's claims in the sample because it found they were not covered by NCD 310.1. ALJ Decision at 11. In particular, the ALJ appears to give two reasons relevant here. First, the ALJ concluded the injections were unreasonable and unnecessary because they are excluded under LCD L33933. Second, the ALJ determined Hartsville Anesthesia failed to present sufficient scientific evidence demonstrating the injections were medically reasonable and necessary.

Hartsville Anesthesia challenges the ALJ's coverage denial for multiple reasons, two of which will be addressed below.

### a.      *Whether the ALJ erred in relying on LCD L33933*

First, Hartsville Anesthesia challenges the ALJ's reliance on LCD L3393, arguing it is "inapplicable" because it is "outside the Provider's jurisdiction." Plaintiff's Motion for Summary Judgment at 14. Defendants assert, however, although the ALJ referenced and discussed the LCD, it was merely "persuasive evidence" relevant to the medical reasonability and necessity question. Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment at 23-24 [hereinafter Defendants' Motion].

LCD L33933 was promulgated by First Coast Services Options, Inc. Dep't of Health & Hum. Servs., Ctrs. for Medicare & Medicaid Servs., L33933, Peripheral Nerve Blocks (2019) [hereinafter LCD L33933]. First Coast Services is the MAC which processes claims arising out of Florida, Puerto Rico, and the Virgin Islands. Dep't of Health & Hum. Servs., Ctrs. for Medicare

& Medicaid Servs., Local Coverage Determinations, cms.gov/medicare/coverage/determination-process/local.

In that region, the LCD describes the circumstances in which First Coast Services will pay claims for peripheral nerve block injections, like those at issue in this case. But First Coast Services is irrelevant here—Palmetto GBA is the Medicare Part B MAC for claims arising out of South Carolina, where the injections were provided. *Id.* Nonetheless, the ALJ believed the LCD "provides persuasive authority in this case." ALJ Decision at 9. The ALJ wrote:

> Relevant to the nerve block treatments at issue here, which were administered in each of the 30 Beneficiaries' ankles, LCD L33933 states that they will be considered medically reasonable and necessary for conditions such as the following diagnostic and therapeutic purposes:
>
> 1. When the patient's pain appears to be due to a classic mononeuritis but the neuro-diagnostic studies have failed to provide structural explanation, selective peripheral nerve blockade can usually clarify the situation.
> 2. When peripheral nerve injuries/entrapment or other extremity trauma leads to complex regional pain syndrome.
> 3. When the selective peripheral nerve blockage is used diagnostically in those cases in which the clinical picture is unclear.
>
> [LCD L33933.] The LCD specifically notes that medications, behavioral therapy, and physical therapy should be used in conjunction with peripheral nerve blocks, where appropriate. *Id.* It also requires the supplier to explore alternative therapeutic options, such as a denervation procedure "[i]f the patient does not achieve progressively sustained relief with repeat injections." *Id.*

*Id.* (last alteration original). The ALJ then applied LCD L33933 to the injections at issue:

> LCD L33933 provides a non-exhaustive list of covered conditions. *Id.* The clinical trial at issue here lists five diagnosis codes in support of the peripheral nerve injection services (64450): (353.0) brachial plexus (pain) cervical; (353.1) lumbar plexus lesions (pain) lumbar; (729.5) pain in limb; (459.9) unspecified circulatory system disorder; and (459.89) other specific circulatory system disorder.

15

> None of these five diagnostic codes are among the conditions listed in the LCD. Consequently, peripheral nerve injection services (64450) are not medically reasonable and necessary under the plain language of LCD L33933.

ALJ Decision at 9 (emphasis added). Thus, based at least in part on LCD L33933, the ALJ determined the injections are not "generally available to Medicare beneficiaries" and therefore "are not reasonable and necessary under NCD 310.1 and [42 U.S.C. § 1395y(a)(1)(A)]." *Id.* at 11.

Hartsville Anesthesia contends the ALJ's decision must be invalidated because of its reliance on LCD L33933 as that LCD is inapplicable to the MAC jurisdiction in which the services were provided. Defendants maintain the ALJ used it as only persuasive authority, it is permissible for an ALJ to consider extra-jurisdictional LCD's, and, in any event, LCDs are without binding authority on an ALJ.

The Court agrees with Hartsville Anesthesia because it was improper for the ALJ to rely on LCD L33933 in any way, either as controlling or so-called persuasive authority. The LCD was created by the MAC that covers a different Medicare jurisdiction. It is therefore entirely inapplicable to Hartsville Anesthesia and these services. *Cf. Caring Hearts Pers. Home Servs., Inc. v. Burwell*, 824 F.3d 968, 970 (10th Cir. 2016) (reversing denial of reimbursement where CMS "applied the wrong law" by using regulations adopted years after the services were provided). An LCD is never binding on an ALJ, and this LCD in particular was inapplicable to the claims because it covered a different jurisdiction, so the ALJ should have declined to give it any deference. 42 C.F.R. § 405.1062(a) (providing ALJs "are not bound by LCDs . . . but will give substantial deference to the[m] if they are applicable to a particular case"). Although the ALJ indicated the LCD was considered as merely persuasive authority, it appears to have given virtually controlling influence to the LCD.

16

After finding the LCD excludes coverage of these injections because of the diagnosis codes at issue in the clinical trial, the ALJ found as a "consequen[ce]" of "the plain language of LCD L33933," Hartsville Anesthesia was unable to establish the injections were medically reasonable and necessary. ALJ Decision at 9. The only reasonable interpretation of this language is the ALJ viewed the LCD as outcome-determinative. Whether the ALJ treated the extra-jurisdictional LCD as legally controlling or simply extremely persuasive, the apparent effect is the ALJ failed to satisfy its obligation to independently determine if the injections at issue were medically reasonable and necessary. *See* 42 C.F.R. § 405.1062(a)-(b); *id.* at § 405.1000 ("The ALJ . . . conducts a de novo review and issues a decision based on the administrative record . . . ."). The ALJ was required to proceed "by deciding [the] individual case[] through the adjudicative process" without relying on this inapplicable LCD. *Almy v. Sebelius*, 679 F.3d 297, 303 (4th Cir. 2012).

Because the ALJ's final determination was based at least in substantial part on the inapplicable LCD, it was based on an error of law and the decision must be set aside. *See Sierra Club v. State Water Control Bd.*, 64 F.4th 187, 194 (4th Cir. 2023) ("[A]n agency action 'may not stand if the agency has misconceived the law.'" (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943))); 5 U.S.C. § 706(2)(A) (providing the reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law").

> **b.     *Whether the ALJ erred in determining Hartsville Anesthesia failed to demonstrate the injections were medically reasonable and necessary***

Hartsville Anesthesia urges the ALJ's decision also must be set aside because the ALJ misapplied the Medicare Program Integrity Manual [MPIM]. It insists the ALJ incorrectly held it to a higher standard and burden of proof in demonstrating the injections were medically reasonable and necessary—that which is required for the creation of an LCD—than is required by the Medicare statute. Defendants argue the ALJ properly applied the MPIM and correctly concluded

17

Hartsville Anesthesia failed to demonstrate the injections were medically reasonable and necessary.

After determining the LCD precluded coverage of the injections, the ALJ considered whether the injections were otherwise medically reasonable and necessary. ALJ Decision at 9. It wrote:

> In making coverage determination, CMS has interpreted the terms "reasonable and necessary" to mean that the item or service is safe and effective; not experimental; and appropriate, including the duration and frequency of service. CMS has further determined that the relevant tests for applying these terms are whether the item or service has been proven safe and effective based on authoritative evidence, or alternatively, whether the item or service is generally accepted in the medical community as safe and effective for the condition for which it was used.

*Id.* (internal citations omitted). In support of this statement, the ALJ cited Chapter 13 of the Medicare Program Integrity Manual. Both the ALJ and Defendants refer to MPIM Chapter 13 for a its definition of "reasonable and necessary." In that chapter, section 13.5.4 provides,

> Contractors shall determine if evidence exist to consider an item or service to be reasonable and necessary if the contractor determines that the service is: [1] [s]afe and effective; [2] [n]ot experimental or investigational (exception: routine costs of qualifying clinical trial . . .); and [3] [a]ppropriate, including the duration and frequency that is considered appropriate for the item or service [by considering various identified factors]

MPIM § 13.5.4. As Hartsville Anesthesia points out, however, MPIM Chapter 13—entitled "Local Coverage Determinations"—describes the creation of LCDs rather than the determination of individual claims. The standard of proof required to demonstrate a service is reasonable and necessary for purpose of a MAC creating an LCD is not necessarily equivalent to the reasonable and necessary standard in 42 U.S.C. § 1395y(a)(1)(A) applicable to an individual claim on review by an ALJ.

18

After thorough consideration, the Court is convinced there must be a different standard between (1) the showing necessary for a MAC to decide as a rule across its entire jurisdiction when and whether a given treatment or service is reasonable and necessary, and (2) the showing necessary for a provider to demonstrate services or treatment provided to a particular patient were reasonable and necessary under the circumstances. The first is a detailed coverage decision following a heavily structured regulatory process binding on the MAC for every single claim it reviews. *See* MPIM §§ 13.2–13.5 (outlining a multi-step review process with open meetings, public comments, reconsideration review, and consultation and evidentiary requirements). The second is a single determination without impact on any other claim. *Almy*, 679 F.3d at 303 ("The Secretary's own regulations make clear that any policy implications in an adjudication do not have precedential effect." (citing 42 C.F.R. § 405.1063(c))).

The Court is aware MPIM § 3.6.2.2 provides the same factors as those articulated in MPIM § 13.5.4 shall govern individual claim determinations by MACs and QICs. This is the terminology CMS has long used to attempt to define "reasonable and necessary." *See* Medicare Program, 60 Fed. Reg. 48417-01 (Sept. 19, 1995) ("Historically, [the Department] has interpreted the statutory terms 'reasonable' and 'necessary' to mean that a device must be safe and effective, medically necessary, and not experimental."). Nonetheless, the requisite burden of proof in applying those factors must differ because of the inherent difference between a presumptive rule and an individual determination. In other words, while the same factors do control the analysis, the showing required to demonstrate those factors weigh in favor of coverage must be different.

Here, the Court is concerned by the ALJ's apparent reliance—and Defendant's express reliance—on portions of the MPIM that apply only to the creation of an LCD. In doing so, they

19

both treat the evidentiary showing necessary for creating an LCD as equivalent to that necessary to support coverage of an individual claim.

Beginning with Defendants, they refer to MPIM § 13.2.3 and write, "CMS recognizes that it may be appropriate to consult with 'experts (recognized authorities in the field), medical associations or other health care providers for an advisory opinion.'" Defendants' Motion at 17. Defendants, however, omit the beginning of that sentence as written in the MPIM: "Prior to drafting and during development of an LCD, if available the MACs shall supplement their research (see section 13.5.3) with clinical guidelines, consensus documents or consultation by experts (recognized authorities in the field) . . . ." MPIM § 13.2.3. It is incorrect to apply what is—by its express terms—a standard for MACs creating a broad rule to Hartsville Anesthesia supporting a single claim.

Although less obvious than Defendants, the ALJ committed the same error. In support of its decision the injections were unreasonable and unnecessary, the ALJ explained Hartsville Anesthesia had insufficiently supported its position:

> Here, the record submitted for review does not demonstrate that the peripheral nerve injection services (64450) are medially [sic] reasonable and necessary for the five diagnosis codes listed in the clinical trial (i.e., ICD-9 Code 353.0; 353.1; 729.5; 459.9; 459.89). Many of the articles in the record do not address the peripheral nerve injection services (64450) directly; rather, they either discuss the electric cell signaling (EST) treatment (e.g., Mitigating Phantom Limb Pain With Electric Cell Signaling - A Case Report) or combined electrochemical therapy (CET) (e.g., Combined Electrochemical Treatment for Peripheral Neuropathy). Furthermore, some articles do not constitute authoritative medical evidence because they were retrieved from online websites, such as www.painmedicinenews.com or www.medscape.com; and some articles are not even relevant to the peripheral nerve injection services (64450) (e.g., Evidence Based Medicine: A Movement in Crisis?). More importantly, the articles submitted for review are not supported by sound medical evidence, based on scientific data or research studies, or published in peer reviewed medical journals.

> *See* MPIM Ch. 13, § 13.5.1. Thus, the Appellant has not carried the burden to demonstrate that the peripheral nerve injection services (64450) are medically reasonable and necessary for the five diagnosis codes listed in the clinical trial (i.e., ICD-9 Code 353.0; 353.1; 729.5; 459.9; 459.89).

ALJ Decision at 10 (internal record citations omitted). This analysis directly tracks—and cites—the standards for creating an LCD. Most notably, the ALJ found Hartsville Anesthesia failed to submit sufficient sources and "research studies" to support medical necessity. ALJ Decision at 10. In doing so, it expressly relied on MPIM § 13.5.1, which provides: "In conducting a review [of a proposed or current LCD], MACs shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines." MPIM § 13.5.1 (emphasis added). Because the ALJ required Hartsville Anesthesia to present the showing necessary for creating an LCD, it erred as a matter of law.

Given this misplaced reliance on the MPIM, the ALJ's decision cannot stand because it applied the wrong legal standard in making its decision. Rather than requiring Hartsville Anesthesia to demonstrate the injections were medically reasonable and necessary for the patients who received them, the ALJ required it to demonstrate they are always reasonable and necessary for this type of condition. That standard is higher than that required by the Medicare Act, its use was incorrect, and therefore the ALJ's decision was "not in accordance with law." *Almy v. Sebelius*, 679 F.3d 297, 307 (4th Cir. 2012) (quoting 5 U.S.C. § 706(A)).

**C.     *Whether the services were rendered as part of a qualified clinical trial***

Defendants assert Hartsville Anesthesia is unable to prevail regardless of the ALJs reasoning because the clinical trial at issue is "not a 'qualifying clinical trial'" under NCD 310.1 "because, as of the dates Plaintiffs were involved in the clinical trial, [the Agency for Healthcare Research and Quality] had not established self-certification standards." Defendants' Reply in

21

Support of Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment at 3, 5. For its part, Hartsville Anesthesia points to documents in the record where Dr. Odom and Dr. Chad Pfefer, as Principle Investigators of the study, certified NCT 01979367 qualifies for Medicare coverage, as well as Dr. Odom's and Sean Weiss's testimony at the ALJ hearing to the same effect.

Defendants' assertion depends on this portion of NCD 310.1:

> Medicare will cover the routine costs of qualifying trials that either have been deemed to be automatically qualified, have certified that they meet the qualifying criteria, or are required through the NCD process, unless CMS's Chief Clinical Officer subsequently finds that a clinical trial does not meet the qualifying criteria or jeopardizes the safety or welfare of Medicare beneficiaries.

NCD 310.1.

It is unnecessary for the Court to determine whether Defendants are correct because they are unable to show this theory was the basis of the ALJ's decision. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) ("It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" (quoting *Michigan v. E.P.A.*, 576 U.S. 743, 758 (2015))). Nowhere in the ALJ's decision does it even implicitly adopt this rationale. To the contrary, the decision implies the ALJ concluded the study is qualified under NCD 310.1. This Court declines Defendants' invitation to validate the ALJ's decision for reasons other than those articulated by the ALJ. *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citations omitted) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.").

## V.    CONCLUSION

For the reasons explained above, Hartsville Anesthesia's motion for summary judgment is therefore **GRANTED** and Defendants' motion is **DENIED** as to the 467 claims for which the ALJ denied coverage finding they were medically unreasonable and unnecessary.

Hartsville Anesthesia's motion is **DENIED** and Defendants' motion is **GRANTED** as to the other nineteen claims, the claims raised by Advanced Pain, and Hartsville Anesthesia's billing-privileges claim.

Therefore, based on the ALJ's apparent misinterpretation of the applicable legal standards, its decision is **VACATED AND REMANDED** for the ALJ to reconsider Hartsville Anesthesia's 467 claims for which it denied coverage.

Plaintiffs' proposed amendments to their complaint do not concern the claims which the Court holds the ALJ properly denied. The amendments appear to merely conform their complaint to the arguments raised in their motion for summary judgment. Because the Court vacates the ALJ's decision as to the claims that would be addressed by the amended complaint, the amendments would serve no purpose. Therefore, Plaintiffs' motion to amend the complaint is **RENDERED AS MOOT**.

**IT IS SO ORDERED.**

Signed this 17th day of March 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE